**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DELANGELO JOHNSON,

                 Petitioner,                Case Number: 2:11-CV-14910
                                                HON. JOHN CORBETT O'MEARA

v.

LLOYD RAPELJE,

                 Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Delangelo Johnson seeks habeas corpus relief under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. He raises eight claims for habeas relief. Respondent argues that the claims are procedurally defaulted and/or meritless. The Court denies the petition.

**I.      Background**

Petitioner's convictions arise from the killing of Ayanna May. On September 15, 2002, May and Petitioner's girlfriend, Rashawn Cook, argued outside Cook's home on Ashton Street in Detroit. May stood outside her car in front of Cook's home. A person identified as Petitioner exited Cook's home and entered the driver's seat of a van. The van drove close to May, an arm reached out the driver's side window and three shots

were fired in May's direction.  May sustained a fatal gunshot to the head.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Petitioner was sentenced to life imprisonment for the murder conviction, one to five years' imprisonment for the felon in possession conviction, and two years' imprisonment for felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims: (i) trial court improperly instructed the jury on second-degree murder; and (ii) he was denied his right to confrontation, a fair trial and due process by admission of witness's preliminary examination testimony.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Johnson*, No. 249497, 2004 WL 2726065, at *2 (Mich. Ct. App. Nov. 30, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Johnson*, 699 N.W.2d 701 (Mich. 2005).

Petitioner then filed a motion for relief from judgment in the trial court, raising these claims: (i) denied right to a fair trial and impartial jury; (ii) unduly suggestive pretrial photographic identification; (iii) evidence of prior bad acts improperly admitted; (iv) prosecutorial misconduct; (v) ineffective assistance of trial counsel; (vi) cumulative effect of prejudicial errors; and (vii) ineffective assistance of appellate counsel.  The trial

2

court dismissed the motion without prejudice and ordered appointment of counsel to represent Petitioner in the filing of a motion for relief from judgment. *See* 2/16/06 Order, ECF No. 11-13. Petitioner, through counsel, filed another motion for relief from judgment raising essentially raising the same claims raised in the first motion. The trial court denied the motion. *See* 4/13/09 Order, ECF No. 11-14. Petitioner sought leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *See* 10/25/10 Order, ECF No.11-9; *People v. Johnson*, 796 N.W.2d 70 (Mich. 2011).

Petitioner then filed a petition for writ of habeas corpus in this Court. The Court found that the petition was time-barred by the one-year statute of limitations applicable to habeas corpus petitions. *See* 7/9/12 Order, ECF No. 13. The Sixth Circuit Court of Appeals reversed this Court's decision that the petition was untimely and remanded for further proceedings. *Johnson v. Rapelje*, 542 F. App'x 453 (6th Cir. Oct. 22, 2013).

Petitioner seeks habeas corpus relief on these grounds:

I.    Petitioner was denied a fair trial and due process where, over objection, the trial court instructed on second-degree murder.

II.   Extraneous influence on jurors deprived Petitioner of a fair trial and due process.

III.  Use of unnecessarily suggestive pretrial identification procedure deprived Petitioner of due process and a fair trial.

IV.   Impermissibly introduction of prior bad acts denied Petitioner due process and a fair trial.

V.    Prosecutorial misconduct in the form of denigrating defense counsel and

engaging in burden shifting argument denied due process and a fair trial.

VI.    Ineffective assistance of trial counsel in failure to object, failure to file pretrial motions, failure to remove jurors for cause, failure to interview alibi witnesses and present an alibi defense and failure to present expert testimony at trial prejudiced Petitioner.

VII.   Lack of due diligence by the prosecutor in producing eye witness prejudiced Petitioner.

VIII.  Failure to provide constitutionally effective representation on appeal.

Respondent filed an answer to the petition arguing that certain of the claims are procedurally defaulted and that all are meritless.  Petitioner filed a reply brief.

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

4

(2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely

5

bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.    Discussion

#### A.    Procedural Default

Respondent argues that several of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

#### B.    Jury Instruction Claim

Petitioner's first claim for habeas relief argues that the trial court erred in instructing the jury on the lesser-included offense of second-degree murder.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas relief lies for a jury instruction claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process." *Id.* quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). It is not enough to show that the "the instruction is undesirable, erroneous, or even 'universally condemned.'" *Henderson*, 431 U.S. at 154.

7

On direct appeal, the Michigan Court of Appeals held that the testimony presented at trial placed at issue whether Petitioner acted with premeditation and deliberation. *Johnson*, 2004 WL 2726065 at *1. Because the jury could have rationally concluded that there was no premeditation and deliberation, the Court of Appeals found that the instruction was proper. *Id.* Petitioner has not demonstrated any error under state law, much less overcome the substantially higher hurdle he faces under AEDPA. The state court's decision rejecting Petitioner's argument based on jury instructions easily withstands scrutiny under AEDPA.

### C.    Right to an Impartial Jury

In his second habeas claim, Petitioner argues that he was denied his right to an impartial jury because the jury was exposed to an extraneous influence. He argues that the jury witnessed the victim's family members threatening Petitioner's family inside the courtroom.

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717 (1961). The right to due process, however, does not necessarily require a new trial in every instance in which a juror is potentially exposed to an extraneous influence. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

An extraneous influence on a juror is "'one derived from specific knowledge about

8

or a relationship with either the parties or their witnesses.'" *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007), quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)). Examples of extraneous influence include "'prior business dealings with the defendant, applying to work for the local district attorney, conducting an out of court experiment, and discussing the trial with an employee.'" *Id.* quoting *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005). Examples of "internal" influences include "the behavior of jurors during deliberations, the jurors' ability to hear and comprehend trial testimony, and the physical and mental incompetence of a juror." *Williams v. Bagley*, 380 F.3d 932, 945 n.7 (6th Cir. 2004).

The last state court to issue a reasoned opinion regarding this claim, the trial court, held that the claim was not properly preserved, but nonetheless addressed the merits. The trial court denied the claim on the ground that no disruptions occurred in the courtroom in front of the jury. 4/13/09 Order at 6-7, ECF No. 11-14, Pg. ID 1305-06. The trial court rejected Petitioner's claim that "improper conduct took place during voir dire, in clear sight and hearing distance of the jury," because it "it is simply untrue." *Id.* The trial court held that: "Nothing occurred in court. Nothing occurred in front of the jury." *Id.* at 7, ECF No. 11-14, Pg. ID. 1306. The court found "no evidence any juror was threatened or any juror was aware of the problem between the families." *Id.* The court noted that after a jury was selected, the court excused the jury, and met with the families of the defendant and the victim and cautioned and admonished them that they much each adhere to the rules of courtroom decorum. *Id.* The court reiterated that all of this occurred

9

outside the jury's presence. *Id.*

Petitioner argues that the record contradicts the trial court's finding because when the trial court met with defendant's family, the judge stated "I mean, I was sitting right here, and I could hear it from the back row; a woman and a man said something; I know." 4/29/03 Tr., at 99-100, ECF No. 11-2. This citation to the record is insufficient to show that the trial court's factual finding that jurors were not present during the families' brief, contentious interaction was clearly erroneous. There is simply no evidence that the jury witnessed any improper conduct. Therefore, it was not an unreasonable application of Supreme Court precedent for the state court to conclude that the jury was not exposed to extraneous influences.

### D.    Pretrial Identification Procedure

Petitioner next argues that the pretrial identification procedure was unduly suggestive and that Eugene Galloway's in-court identification should have been suppressed on that basis. Galloway, who was 12-years old at the time of trial, witnessed the shooting from his aunt's car. He later selected Petitioner's photograph from a photo array and identified him as the man he saw enter the van from which the fatal gunshot was fired. Petitioner argues that the photo array was unduly suggestive because he was the only person with braids, the only one wearing a white shirt, and the most light-skinned.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and

10

unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers'* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence. *Brathwaite,* 432 U.S. at 112-113. Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis. *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *U.S. v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114. A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).

11

The Michigan trial court (the last state court to issue a reasoned opinion regarding this claim) held that the identification procedure was not impermissibly suggestive stating, in relevant part:

> As a general rule, " physical differences between a suspect and other line-up participants do not, in and of themselves, constitute impermissible suggestiveness . . ." *People v. Kurylczyk*, 443 Mich. 289, 312; 505 N.W.2d 528 (1993) *quoting People v. Benson*, 180 Mich. App. 433, 438; 487 NW2d 765 (1989). Differences between the participants of a line-up are considered legally significant only if they are apparent to the witness, and the difference substantially distinguishes a suspect from the other participants in the show-up to the extent that "there exists a substantial likelihood that the differences among line-up participants, rather than recognition of defendant, was the basis of the witness' identification." *Kurylczyk* at 312, quoting *People v. James*, 184 Mich. App. 457; 458 N.W.2d 911 (1990).
>
> Defendant has not demonstrated that the photographic show-up was impermissibly suggestive.
>
> In this instance there was no significant demonstrable difference in the height, weight, hair length, hair color, facial features, etc. of the photographs. There are always some differences in the participants selected and, of necessity there must be, as no two individuals are identical in all characteristics of their appearance. All the photos used in the array were head and shoulder shots. This style of photograph limited the presentation and view of the head, shoulders and part of the chest of each person in the array.
>
> Defendant claims he was suggestively distinguished in this array because his hairstyle was in braids. However, the show-up reveals the hair length of all the persons in all the photos was very similar. Neither the length, color, nor style was a distinguishing factor. Moreover, Eugene testified and described the shooter to the police as having an "afro" hairstyle. None of the participants in the photo array had that style.
>
> Defendant claims the fact he was the only person in a white shirt in the array is an impermissibly distinguishable feature. The fact defendant was the only one in a white shirt in the array is irrelevant. M.R.E. 401. Eugene

12

testified the shooter wore no shirt.  Nothing in the record indicates Eugene's selection of defendant was based on clothing, a white shirt, rather than recognition of the person of Johnson, as Eugene testified at trial.

\*\*\*

... [N]othing in the record indicates that the photo show-up was impermissibly suggestive.

4/13/09 Order, at 10-12, ECF No. 11-14, at Pg. ID 1309-1311.

The trial court also held that nothing in the record indicated that Eugene's testimony was influenced by alleged differences in the photographs contained in the array.  *Id.*

The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent.  Moreover, even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable.  Ultimately, the reliability of the in-court identification was for the jury to decide.  *Perry*, 132 S. Ct. at 729-30.  Habeas relief is denied on this claim.

### E.    Admission of Prior Bad Acts Evidence

Next, Petitioner argues that the trial court improperly admitted prior bad acts evidence in the form of Petitioner's use of aliases.  The state court held that this evidence was properly admitted under state law.

"[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience

13

of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552

(6th Cir. 2000) *quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  The Supreme

Court has declined to hold that the admission of "other acts" evidence is so extremely

unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493

U.S. 342, 352-53 (1990). The Court has discussed when other acts testimony is

permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485

U.S. 681 (1988), but has not addressed the issue in constitutional terms.  Such matters are

more appropriately addressed in codes of evidence and procedure than under the Due

Process Clause. *Dowling*, 493 U.S. at 352.  "There is no clearly established Supreme

Court precedent which holds that a state violates due process by permitting propensity

evidence in the form of other bad acts evidence."  *Bugh v. Mitchell*, 329 F.3d 496, 512

(6th Cir. 2003).  Consequently, there is no "clearly established federal law" to which the

state court's decision could be "contrary" within the meaning of section 2254(d)(1).  *Id*. at

513.  Therefore, habeas relief is not available on this claim.

### F.    Prosecutorial Misconduct Claim

Petitioner's fifth claim alleges that the prosecutor engaged in misconduct.

Specifically, Petitioner argues that the prosecutor denigrated defense counsel and shifted

the burden of proof to the defense.

The "clearly established Federal law" relevant to a habeas court's review of a

prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*,

477 U.S. 168, 181 (1986).  *Parker v. Matthews*, 567 U.S. 37, —, 132 S. Ct. 2148, 2153

14

(2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155, quoting *Harrington*, 562 U.S. at 103.

First, Petitioner argues that the prosecutor denigrated defense counsel when, during her rebuttal closing argument, she suggested that defense counsel was trying to "poison" the jury's view of her in relation to her handling of Eugene Galloway, who was 11-years old at the time of the shooting. *See* 5/1/03 Tr., at 82, ECF No. 11-4, Pg. ID 697. Eugene identified Petitioner as the shooter shortly after the shooting, but wavered in his identification at trial. Petitioner argues that this claim, although properly presented, was not addressed by the trial court. Petitioner argues that the claim should therefore be reviewed *de novo*. The Court need not address this issue because even if *de novo* review applies, Petitioner cannot prevail under this more lenient standard.

A prosecutor may not personally attack defense counsel, but the prosecution has "'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 223 (6th Cir. 2009), *quoting United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). The prosecutor's argument about

15

defense counsel in this case "was not so incendiary as to inflame the jury's passions or distract them from the specific question of [Petitioner's] guilt or innocence." *Davis v. Burt*, 100 F. App'x 340, 348 (6th Cir. 2004), citing *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). The trial judge also instructed the jury that the attorneys' arguments, questions, and statements were not evidence. The prosecutor's isolated comment did not render the entire trial unfair.

Petitioner also argues that the prosecutor improperly shifted the burden of proof when she made the following statement in closing argument:

> And then he [the police officer] asks the question, "did you shoot Ayanna May in front of 19701 Ashton? And his answer was "I don't even know Ayanna May." Not, I've never shot anyone in my life. Not I've never shot anyone on Ashton. But I don't even know Ayanna May. Do you know that he never denied committing the crime?

5/1/03 Tr., at 60, ECF No. 11-4.

The state court found no improper burden-shifting. 4/13/09 Order at 19, ECF No. 11-14 at Pg. ID 1318. Petitioner fails to cite any clearly established law holding that the prosecutor's argument was unconstitutional. Supreme Court precedent supports the prosecutor's right to comment on and question the content of Petitioner's police statement. A prosecutor may not use a defendant's post-*Miranda* silence to impeach a defendant's trial testimony because "the *Miranda* warnings carry an 'implicit assurance' that silence will carry no penalty." *Pillette v. Berghuis*, 408 F. App'x 873, 880 (6th Cir. 2010), quoting *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). "But *Doyle* does not apply where the defendant does not invoke his right to remain silent because 'a defendant who

16

voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.'" *Pillette*, 408 F. App'x at 880, quoting *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Petitioner responded to police questions rather than invoke his right to remain silent. Therefore, the prosecutor's argument regarding Petitioner's responses to police questions were not unconstitutional.

### G.    Ineffective Assistance of Trial Counsel Claim

Petitioner next seeks habeas corpus relief on the basis of ineffective assistance of counsel. He claims counsel was ineffective in failing to: (i) object to the prosecutor's misconduct; (ii) move to suppress Eugene Galloway's identification of Petitioner; (iii) request and present expert testimony on identification; and (iv) call Karl Maydwell as a witness.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

17

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

First, Petitioner argues that counsel was ineffective for failing to object to several instances of prosecutorial misconduct.  As discussed above, Petitioner has failed to show that the prosecutor engaged in misconduct.  Therefore, counsel was not ineffective for failing to object on this basis.

Petitioner's claim that counsel was ineffective in failing to file a motion to suppress Eugene Galloway's identification is also meritless.  As discussed above, Petitioner failed to show that the identification was suggestive.

Next, Petitioner claims that counsel was ineffective in failing to present expert testimony on identification.  "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).  Although counsel did not call an expert

18

witness on the problems of eyewitness identification, trial counsel vigorously

cross-examined Eugene Galloway about the problems with his identification. Petitioner

was not denied effective assistance of counsel due to trial counsel's failure to seek the

assistance of an expert witness on identification, where counsel elicited testimony to

question the witness's identification testimony.

Finally, Petitioner argues that counsel was ineffective in failing to call Karl

Maydwell to testify for the defense. He argues that Maydwell would have testified that,

during the time period of the murder, Petitioner was constantly wearing dreadlocks. The

trial court, the last state court to issue a reasoned opinion on this claim, held that

Maydwell's testimony would have been cumulative to the testimony of a cosmetologist

and Petitioner's mother, both of whom testified that Petitioner wore dreadlocks. 4/13/09

Order at 16-17 (ECF No. 11-14, Pg. 1326). The trial court also rejected Petitioner's

argument that Maydwell would have provided him with an alibi. Maydwell's affidavit

states that "[b]etween 1992 and 2002," Petitioner often came to his home to visit, "usually

on Sundays after assisting" an elderly neighbor. Affidavit of Karl Maydwell, dated

6/6/08 (ECF No. 1-1, Pg. ID. 80). This vague recitation of Petitioner's general habits

without specific reference to the date of the shooting would not have provided any

meaningful alibi for Petitioner. The trial court's holding that counsel was not ineffective

for failing to call Maydwell is not contrary to or an unreasonable application of Supreme

Court precedent.

### H.    Missing Witness Claim

Petitioner's next claim for habeas corpus relief concerns the admission of Dantonettee Anderson's preliminary examination testimony. Anderson could not be located at the time of trial and there was evidence that she fled because she was fearful of testifying. The trial court held that the prosecution made a good faith effort to secure Anderson's presence at trial and admitted her preliminary examination testimony. Petitioner argues that the trial court erred in admitting this testimony because the prosecution failed to show due diligence, in violation of his rights under the Confrontation Clause.

The United States Constitution's Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The right to a trial by jury is based on the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'" *Id.* at 405 (quoting *Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)).

The Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Petitioner

20

challenges the trial court's finding that Anderson was unavailable because, he argues, the

prosecution did not make a good-faith effort to obtain her presence at trial.  Under federal

law, "a witness is not 'unavailable' for purposes of the ... exception to the confrontation

requirement unless the prosecutorial authorities have made a good-faith effort to obtain

his presence at trial."  *Barber v. Page*, 390 U.S. 719, 724-25 (1968).  "The ultimate

question is whether the witness is unavailable despite good-faith efforts undertaken prior

to trial to locate and present that witness"; "the prosecution bears the burden of

establishing this predicate."  *Ohio v. Roberts*, 448 U.S. 56, 74-75 (1980), abrogated on

other grounds by *Crawford*, 541 U.S. 36.

Applying this due diligence standard, the Michigan Court of Appeals held that the

prosecution exercised due diligence in attempting to locate Anderson:

> The prosecutor had met with Anderson before trial and did not anticipate
> that she would fail to appear.  Bench warrants were issued on the first day
> of trial when Anderson and two other witnesses did in fact fail to appear,
> despite subpoenas, and the prosecutor learned that Anderson was "choosing
> not to be here."  An adjournment was granted until the next morning to
> allow authorities to search for these witnesses and execute the bench
> warrants.  The following day, the prosecutor noted that one of the missing
> witnesses, but not Anderson, had been arrested.  Further, Anderson's
> mother was present and advised that Anderson was fearful and had
> absconded with her two children.  It was established that the police had
> gone to Anderson's home several times and that the preceding evening, the
> police heard that she was staying in a hotel on Telegraph Road and thus
> sought her at twenty-seven motels and hotels.  They also contacted the
> schools attended by Anderson's children, but the children were absent.
> These were reasonable efforts and constituted due diligence.

*Johnson*, 2004 WL 2726065 at *2.

This Court cannot say that the Michigan Court of Appeals' decision that the

prosecutorial team acted with due diligence to secure Anderson's presence at trial was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. The Supreme Court has held that "[t]he lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *Roberts*, 448 U.S. at 74. The record supports a finding that the prosecution acted with reasonable diligence in this case.

### I.      Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner argues that his appellate attorney was ineffective in failing to present on direct appeal the issues raised in his motion for relief from judgment.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). None of the claims Petitioner argues his appellate attorney should have raised on appeal have been shown to have any merit. Therefore, counsel was not ineffective in failing to raise them.

## IV.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.  Therefore, the Court denies a certificate of appealability.

## V.    Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED**.

s/John Corbett O'Meara
United States District Judge

Date:  February 3, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, February 3, 2017, using the ECF system.

s/William Barkholz
Case Manager

23